IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03320-RPM

JACQUES BOURRET,

      Plaintiff,

v.

ASPECT MANAGEMENT CORP.,
ASPECT HOLDINGS, LLC
ASPECT ENERGY, LLC, and
ASPECT ENERGY INT'L, LLC,

      Defendants.

## STIPULATION AND ORDER REGARDING
## ESI AND PAPER DOCUMENT PRODUCTION PROTOCOL

WHEREAS, this action is before the United States District Court for the District of Colorado;

WHEREAS, based upon the information represented by the parties at the time of this Stipulation and Agreement ("Agreement") of the potentially relevant sources of ESI, and in reliance on that information, the parties have in good faith engaged in discussions regarding the production format of such ESI and the production of paper documents which the parties have available to produce:

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

This Agreement shall govern the production of all documents produced in this matter, including documents produced in response to the parties' Rule 26 disclosures and all discovery requests from the date of this Agreement forward.

I. **PRODUCTION FORMAT:**

A. **Attachments and Parent-Child Relationships.** Separate document(s) (the "child") attached to another document (the "parent") shall be produced contemporaneously and sequentially immediately after the parent document. Parent-child relationships (the association between an attachment and its parent document) shall be preserved. Documents embedded inside other documents (*e.g.*, a Word file embedded inside a PowerPoint file) shall be designated as "attachments" (or words to that effect) to the embedding (parent) file. In the preceding example, the Word document would be designated as an attachment (child) of the PowerPoint file (parent). Attachment Range Fields shall include begin/end bates range, as well as begin/end bates range for attachment or be designated in another appropriate way.

B. **Paper Documents.** Where practicable, documents that originally existed in paper form ("Paper Documents") will be produced in an electronic image form, as TIFF images. Paper Documents shall be produced as they are maintained in the ordinary course of business, including all separations, attachments, and affixed notes as they existed in the original. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents shall be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will address situations where there are improperly unitized documents.

C. **Production of Non-Database ESI:** The parties agree to produce non-database ESI which they have available to produce as follows:

1. Non-database ESI will be produced in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8 1/2 X 11 inch page size, except for documents requiring different resolution or page size. If an original document contains color, a party may request the document be re-produced in color and the producing party shall honor reasonable requests to either make the document available in color for inspection and copying or for production of a color image of the document. The requesting party shall pay the costs of the production of any printed color images of any documents.

2. A unitization file, in standard format (e.g., Opticon, Summation DII, or the like) showing the Starting Bates and Ending Bates, as well as identifying any attachments, Confidentiality notation (if applicable), and the metadata fields identified in Paragraph 5 of this Section will accompany each TIFF image.

3. Each TIFF image of an electronic document will be created directly from the original electronic document as maintained in the parties' systems.

4. Electronic documents attached to an e-mail shall be produced contemporaneously and sequentially immediately after the parent e-mail.

5. The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original documents: author, attachments (i.e., attach), bcc, cc, time created, date sent, date last modified,

time last modified, from, importance, date received, time received, recipients (i.e., to), time sent, subject (i.e., e-mail subject), and title (i.e., file name).

6. A party may modify the list contained in Paragraph 5 in the event that it identifies responsive non-database ESI based on systems other than Microsoft applications and containing different metadata fields.

7. In addition to the metadata described above, where alterations have been made by the parties to static images (e.g., comments added to Adobe PDF documents include notes, highlights, stamps, or any other markup), non-privileged metadata will be produced to the extent it exists.

8. An extracted searchable full text file version will be produced for each electronic document. Each extracted full text version will be assigned a unique file name or identifier.

9. The parties and their respective vendors shall work together regarding the specifics of the load file formatting for a commercially available document management or litigation support software.

10. Subsequent to the production of the non-database ESI in TIFF format, a receiving party may request that the producing party provide additional metadata information not already provided in accordance with the list set forth in Paragraph C(5), or that the producing party produce certain imaged files in an alternative format. Such requests shall be made according to the following protocol:

        a.     The receiving party shall provide a list of Bates numbers for the imaged documents covered by the request, as well as an explanation for why the additional metadata or the alternative format is being requested. The requesting party shall pay for costs for the additional metadata or alternative format requested if the producing party agrees to or is ordered to provide the additional information

        b.     The producing party shall have ten (10) business days to agree to provide the requested additional metadata or make the documents available in alternative format, or object to the demand. If the producing party objects to the demand, the producing party will respond in writing, setting forth the basis for the objection.

        c.     If the parties are unable to agree regarding a request for production as contemplated by this Paragraph, the parties may submit the matter to the Court.

        11.     In the event that non-database ESI is produced in native format, such files will be assigned a unique file name or identifier and a hash value. The producing party shall provide a placeholder at the Bates number where the document was originally located. The producing party will use reasonable efforts to produce each such natively produced document using a file naming convention such that the document retains its original file name.

### D.    Production of Database ESI

        1.     The parties and their respective vendors shall work together regarding the specifics of the production format (i.e., query format) for database ESI.

## II. DE-DUPLICATION

A. If a producing party chooses to de-duplicate documents, the producing party may only omit from the production documents that are 100% duplicates (e.g., if a document was prepared in several copies, or if additional copies were subsequently made, and any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such existing non-identical copies shall be produced). The duplicate copies that are produced shall include all metadata required by this Agreement, including but not limited to the multiple custodians possessing duplicate copies.

B. Each party will disclose the methodology it used to de-duplicate (e.g., MD5 Hashing, SHA-1).

C. The parties will meet and confer in an attempt to reach agreement as to the type of de-duplication methodology to be used for the production. If the parties are unable to resolve any such de-duplication issues, the dispute will be referred to the Court for resolution.

## III. OBLIGATIONS OF THE PARTIES

Nothing in this Agreement shall be construed to change the parties' obligations or rights under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

## IV. FAILURE TO ADHERE TO AGREEMENT

If any party fails to adhere to the provisions of this Agreement, that party shall remedy any such failure – as soon as practicable, and at that party's own expense.

## V. MODIFICATION OF AGREEMENT

The parties agree that this Agreement was entered into based upon the information available at the time that it was executed by the parties and may be subject to modification in the future. Any party may file a motion to seek individual relief from this Agreement, including for reasons of undue or excessive costs.

DATED this 2nd day of April, 2013.

BY THE COURT:

Richard P. Matsch, Senior District Judge

STIPULATION AND ORDER RESPECTFULLY SUBMITTED:

/s/ Frances Koncilja
Frances Koncilja
Koncilja & Associates, P.C.
800 Eighteenth Street, Suite 300
Denver, Colorado 80202
fkoncilja@koncilja.com
(303) 675-0900

R. Paul Yetter
Wynn B. McCloskey
Yetter Coleman LLP
909 Fannin, Suite 3600
Houston, Texas 77010
pyetter@yettercoleman.com
wmcloskey@yettercoleman.com
(713) 632-8000
*Attorneys for Plaintiff Jacques Bourret*

/s/ Gordon W. Netzorg
Gordon W. Netzorg
Peter G. Koclanes
Sherman & Howard L.L.C.
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
pkoclanes@shermanhoward.com
gnetzorg@shermanhoward.com
(303) 297-2900

*Attorneys for Defendants*
*Aspect Management Corp.,*
*Aspect Holdings, LLC,*
*Aspect Energy, LLC, and*
*Aspect Energy Int'l, LLC*