IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 12-cv-03320-RPM

JACQUES BOURRET,

    Plaintiff,

v.

ASPECT MANAGEMENT CORPORATION,
ASPECT HOLDINGS, LLC,
ASPECT ENERGY, LLC, and
ASPECT ENERGY INT'L, LLC,

    Defendants.

## ORDER ON POST-HEARING BRIEFING

After an April 22, 2014 hearing, the parties submitted five pleadings: (1) Defendants' ("Aspect") Brief Concerning the Definition of "Project" in its Consulting Agreement with Plaintiff Jacques Bourret [Doc. 108]; (2) Aspect's Motion for Reconsideration Concerning Plaintiff's Fraud Claims [Doc. 109]; (3) Plaintiff's Damages Brief Regarding the Atrush Project [Doc. 111]; (4) Defendants' Motion for Separate Trials of Liability and Damages [Doc. 127]; and (5) Bourret's Motion for Partial Reconsideration of Exclusion of Testimony of Douglas Osterhus [Doc. 131]. The Court will address each in turn.

1. Definition of "Project" [Doc. 108]

Bourret relies on this provision in the Consulting Agreement to support his claims:

    [Bourret] shall receive 1.5% of the net profits (net cash flow from the project after the Company or its relevant affiliate recuperates [sic] its original and subsequent investment) in any project originating from the direct and substantial work of [Bourret's].

[Doc. 108, Ex. A § 2(c)(ii).] The language "any project" in that provision is plainly non-specific. It must be considered in the context of the services Bourret was retained to provide under the Agreement:

> [Bourret] shall provide to the Company and its affiliates management advice and services regarding project selection (including leading technical and market due diligence and economic analysis) and subsequent organization and operations (collectively the "Services") relating primarily to the Company's participation in oil and gas activities in the Middle East, but may include any country the Company directs (the "Territory"). [Bourret] will report to and be responsible for the duties and responsibilities as directed by Alex Cranberg and Todd Neugebauer.

[Id. § 2(a).] The issue in this case is whether the Atrush is a "project" originating from Bourret's direct and substantial work.

2. Aspect's Motion for Reconsideration Concerning Plaintiff's Fraud Claims [Doc. 109]

The Court previously concluded that disputed issues of material of fact preclude summary judgment of Bourret's claims for fraudulent misrepresentation and fraudulent inducement. [See Doc. 81.] Aspect has moved the Court to reconsider that decision. In support, Aspect (1) maintains that the damages Bourret's fraud claims are based on—1.5% of the net profits from the Atrush Project—are identical to the damages he claims for breach of contract; and (2) restates its position that Bourret has failed to produce competent evidence concerning certain elements of his fraud claims.

The Colorado doctrine of election of remedies prevents a plaintiff from recovering twice for the same wrong. Cross Country Land Servs., Inc. v. PB Telecomms., Inc., 276 Fed. Appx. 825, 830 (10th Cir. 2008). That rule does not, as Aspect contends, preclude a plaintiff from bringing two different claims for the same damages. It simply prohibits a plaintiff who prevails on both claims from recovering the same damages twice. See Oilman Int'l v. Neer,

2

No. 10-cv-02810, 2012 WL 2871684, at *5 (D. Colo. Apr. 20, 2012) (Boyland, M.J.) ("The plaintiff may recover its actual damages only once, regardless of the theory of recovery.") Bourret may proceed with his fraudulent misrepresentation, fraudulent inducement, and breach of contract claims at trial. If the jury returns a verdict in his favor on one, two, or all three of them, his damages will be recovered only once according to the jury's determination.

    3.  <u>Plaintiff's Damages Brief Regarding the Atrush Project [Doc. 111]</u>

In his damages brief, Bourret argues that he is entitled to 1.5 percent of the net profits from the Atrush Project in perpetuity under the Consulting Agreement, even though Aspect no longer has any interest in the Project or any right to future profits.

Aspect Energy International ("AEI") formed General Exploration Partners ("GEP") as a subsidiary on November 7, 2007. Three days later, GEP signed a production sharing contract with the Kurdistan Regional Government to explore and develop the Atrush Block. According to Bourret, GEP is Aspect's "relevant affiliate" under the parties' Agreement.

In August 2010, AEI sold 33.5% of its interest in GEP to ShaMaran Ventures BV, an unrelated third party. On December 31, 2012, Aspect sold its remaining 66.5% interest in GEP to TAQA, another unrelated third party. Thus, GEP was owned by unrelated third parties (ShaMaran and TAQA) from that point on. Aspect has had no revenue from the Atrush project since the sale.

Accordingly, at trial, Bourret's damages calculation will be limited to the net profits received by Aspect from the sale of its interest in the Atrush Project. Bourret's expert Jeff Compton is precluded from opining about, and Bourret's counsel is forbidden from discussing, GEP's remaining interest in the Atrush Project following Aspect's December 31, 2012 sale of GEP to TAQA.

4. Aspect's Motion for Separate Trials on Liability and Damages [Doc. 127]

Aspect's Motion is denied.  It is contrary to this Court's view of the jury's role, which includes the possibility of disagreeing with the arguments of counsel and reaching a compromise.

5. Bourret's Motion for Partial Reconsideration of Exclusion of Testimony of Douglas Osterhus [Doc. 131]

At the April 22, 2014 hearing, the Court granted Aspect's motion to exclude the testimony of Douglas Osterhus, Bourret's expert on the issue of origination, because part of Osterhus' opinion related to oil and gas deals in Kurdistan, where he has no prior experience.

Osterhus worked at ExxonMobil for 38 years.  He worked in the United States and Africa from 1975, when he joined the company, until 2006.  In 2007, he began working on obtaining new gas development concessions and enhanced oil recovery projects "across the Middle East" as Exxon's Development Planning Advisor; he held that position until 2009. From 2010 to 2013, he was the Commercial/Technical Advisor for ExxonMobil Upstream Ventures responsible for the assessment, development and commercial negotiation of new Middle East oil and gas opportunities.  [Doc. 98 at 12-13.]  In that capacity, Osterhus engaged in "extensive commercial negotiations" for multi-million-dollar deals with National Oil Company leaders in the Middle Eastern countries of the United Arab Emirates, Qatar, Yemen, and Bahrain; he also developed commercial strategies to get those leaders to agree to move forward with proposed projects.  [Id. at 13.]  Thus, Osterhus focused on Middle Eastern oil and gas development for roughly six of the 38 years he worked at Exxon.

Upon further consideration, the Court finds that Osterhus may be able to provide some relevant geopolitical information concerning oil and gas exploration in the Middle East. To do so, he must first prepare a new written report and be subject to another deposition.

6. Conclusion

Upon the foregoing, it is

ORDERED that the word "project" in the parties' Consulting Agreement is defined as explained above [re Doc. 108]; and it is

FURTHER ORDERED that Aspect's Motion for Reconsideration Concerning Plaintiff's Fraud Claims [Doc. 109] is denied; and it is

FURTHER ORDERED Bourret's damages calculation will be limited to the net profits received by Aspect from the sale of its interest in the Atrush Project [re Doc. 111]; and it is

FURTHER ORDERED that Aspect's Motion for Separate Trials on Liability and Damages [Doc. 127] is denied; and it is

FURTHER ORDERED that Bourret's Motion for Partial Reconsideration of Exclusion of Testimony of Douglas Osterhus [Doc. 131] is granted, subject to the condition that Osterhus prepare a new report and be subject to another deposition.

Dated: June 10, 2014.

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge